UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____    :
                               :
DANIEL RUGA,                   :
                               :       Civil Action No.
            Plaintiff,         :       09-cv-5347 (NLH/KMW)
                               :
      v.                       :
                               :
ANNETTE MARIA OAKLEY, DANIEL   :       MEMORANDUM OPINION AND
SCOTT PERRINE, et al.,         :       ORDER
                               :
            Defendants.        :
_____    :
```

**HILLMAN, District Judge**

THIS MATTER having been raised by the motion filed by Plaintiff, Daniel Ruga, on or around September 14, 2010, seeking default judgment against Defendants, Annette Maria Oakley and Daniel Scott Perrine; and

The Court noting that Plaintiff filed the complaint in this action on October 19, 2009 alleging claims for legal malpractice against Defendants Oakley and Perrine, attorneys whom Plaintiff originally retained to represent Plaintiff in a New Jersey state court litigation regarding Plaintiff's former business Vineland Metal Works ("VMW"), captioned as Daniel Ruga v. HSD Developers, et al., Superior Court of New Jersey, Law Division, Atlantic County, No. ATL-L-17209; and

The Court further noting that Plaintiff alleges that Defendants Oakley and Perrine committed legal malpractice in the

underlying New Jersey state court litigation by, among other things, failing to conduct timely discovery resulting in Plaintiff's inability to prosecute the underlying case at trial, by failing to appear at trial without explanation which resulted in the dismissal of Plaintiff's underlying case, by failing to file a proper and timely motion for reinstatement of Plaintiff's underlying case, by withdrawing from the representation without explanation, and by refusing to produce a copy of Plaintiff's original file to Plaintiff's current counsel in this action; and

The Court having granted Plaintiff's motion for default judgment against Defendants Oakley and Perrine by Order dated June 8, 2011; and

The Court, in that Order, instructing Plaintiff to submit whatever documentation or evidence he may have to demonstrate the merits of his case for legal malpractice against Defendants Oakley and Perrine and the amount of damages to which he is entitled; and

Plaintiff having provided such documentation to the Court, including: (1) a sworn and notarized Affidavit by Plaintiff demonstrating the merits of his case and his entitlement to damages, (2) a brief and analysis on the issue of damages prepared by Plaintiff's counsel, explaining the method by which

damages were calculated, (3) exhibits supporting the calculation of damages; and

The Court, accepting Plaintiff's representations, which were not opposed by Defendants Oakley and Perrine with respect to this motion, finds that Plaintiff is entitled to receive $893,786.06.  This value was reached by calculating the following values, and then totaling them: (1) the projected loss of income related to the VMW business for a ten (10) year time period; (2) the reversion value of VMW after ten years; (3) the claimed diminution in value of R-Way Tooling based on incorrectly inflated liabilities; (4) court-ordered counsel fees and costs Plaintiff was required to pay to HSD Developers and Zurich American Insurance Company, the defendants in the underlying New Jersey state court litigation, as a result of the alleged misconduct by Defendants Oakley and Perrine; (5) legal fees Plaintiff paid to Defendants Oakley and Perrine related to the underlying New Jersey state court litigation, during Defendants' representation of Plaintiff; (6) legal fees Plaintiff incurred and paid to Plaintiff's current counsel in order to reinstate the underlying New Jersey state court litigation; (7) cleanup costs associated with the VMW property; and (8) a nominal settlement Plaintiff received from HSD

3

Developers and Zurich American Insurance Company, the defendants in the underlying New Jersey state court litigation.  The Court will treat each of these in turn.

First, using the net present value ("NPV") method to calculate the present value of future income streams from Plaintiff's VMW business, the Court arrives at the same number as Plaintiff: $377,655.70.  This value is achieved by using the formula: $NPV = \text{Net Income} / (1 + R)^t$.  "Net income" is derived from each particular year of the 10-year projected income statement that Plaintiff attached as Exhibit A.  (Pl.'s Aff. on the Issue of Damages [Doc. 12] Ex. A.)  "R" is derived from the average rate of return of the State of New Jersey Cash Management Fund for each relevant year in the 10-year period; this is the same rate used when assessing post-judgment interest on civil judgments in New Jersey state court.[1]  "T" represents the time period, in years.  Thus, the NPV of the first-year income stream is $39,298 / (1 + .02)^1$, or $38,527.45.  The NPV of the second-year income stream is $39,691 / (1 + .04)^2$, or $36,696.56.  This calculation is iterated through the expected life of the business, which was determined to be ten (10) years.  Next, these values are added to arrive at the total NPV of the

---

1.  See N.J. Ct. R. 4:42-11(b).

projected lost income from the VMW business: $377,655.70.

Second, Plaintiff claims a loss for being unable to sell or liquidate the business at the end of its useful life.  This is called the "reversion value."  According to the projected cash flow analysis prepared for the underlying state court litigation, attached as Exhibit B, the expected reversion value of the business at the end of its ten-year life is $185,757. (Pl.'s Aff. on the Issue of Damages [Doc. 12] Ex. B.)  Applying the NPV method of valuation, and using a one-percent (1%) discount rate, the reversion value is: $185,757 / (1 + .01)$^{10}$ = $168,163.39.  This value is different than the $180,293.91 claimed by Plaintiff.  It appears as if Plaintiff erroneously calculated the reversion value using the time period "t" as three, rather than ten, years.

Third, Plaintiff claims a loss based on an allegedly fraudulent misrepresentation of liabilities on the balance sheet in the underlying state court litigation.  The allegedly incorrectly inflated liabilities resulted in a diminution in value of the defendant company in the underlying litigation. The value of this diminution, according to Exhibit C, is $262,103.34.  (Pl.'s Aff. on the Issue of Damages [Doc. 12] Ex. C.)  According to Plaintiff, this amount was due to him no later

than 2008, when the incorrect balance sheet was produced.  Using an average interest rate of two point eight percent (2.8%), the average of the published rates as set forth above for the relevant four-year time period, the calculation for compound interest is: $262,103.34 x $(1.028)^4$ = $292,715.02.  This value is concordant with that reached by Plaintiff.

Fourth, Plaintiff was ordered to pay counsel fees and costs to Zurich American Insurance Company and HSD Developers, the defendants in the underlying state court litigation.  This value is determined by adding the counsel fees and costs associated with both defendants in the underlying litigation, as evidenced by Exhibit D.  (Pl.'s Aff. on the Issue of Damages [Doc. 12] Ex. D.)  In November 2009, Plaintiff was ordered to pay $22,700 in legal fees and $434.39 in costs for defendant Zurich American Insurance Company.  Also in November 2009, Plaintiff was ordered to pay $7,000 in legal fees and $54.26 in costs for defendant HSD Developers.  Adding these values results in a total of $30,188.65.  Plaintiff appears to have erroneously computed this amount, using the incorrect figures on page one of Exhibit D, rather than the accurate, actual figures on page two.

Fifth, Plaintiff seeks legal fees previously paid to his former attorneys, Defendants Oakley and Perrine, in the

underlying state court litigation.  Attached as Exhibit E,
Defendants' invoice to Plaintiff indicates that Plaintiff paid a
total of $11,000 in attorneys' fees to Defendants, and not the
$12,355.87 that Plaintiff claims.  (Pl.'s Aff. on the Issue of
Damages [Doc. 12] Ex. E.)

     Sixth, Plaintiff seeks compensation for the legal fees paid
to his present counsel which Plaintiff incurred in attempting to
reinstate the underlying state court action.  Exhibit F
indicates that Plaintiff made three payments to his present
counsel for this purpose: $5,000, $5,000, and $3.433.60.  (Pl.'s
Aff. on the Issue of Damages [Doc. 12] Ex. F.)  Adding these
values, Plaintiff incurred $13,433.60 in legal fees in order to
reinstate the underlying state court action.  This value is
concordant with that reached by Plaintiff.

     Seventh, Plaintiff seeks cleanup costs associated with the
VMW property, costs which would have allegedly been paid in the
underlying litigation.  Attached as Exhibit G, property cleanup
costs total $15,629.70.  (Pl.'s Aff. on the Issue of Damages
[Doc. 12] Ex. G.)

     Eighth, Plaintiff received a nominal $15,000 settlement in
the underlying state court litigation after it was reinstated.
(Pl.'s Aff. on the Issue of Damages [Doc. 12] ¶ 19.) This amount

should be credited to the instant Defendants for purposes of this default judgment.

Adding the first seven values and subtracting the settlement results in the following calculation: $377,655.70 + $168,163.39 + $292,715.02 + $30,188.65 + $11,000 + $13,433.60 + $15,629.70 - $15,000 = $893,786.06.  Therefore, Plaintiff's total default judgment equals $893,786.06; accordingly

IT IS on this __22nd__ day of __September__, 2014, hereby

**ORDERED** that Plaintiff, Daniel Ruga, shall be **AWARDED** a default judgment in the amount of **$893,786.06** against Defendants Oakley and Perrine; and it is further

**ORDERED** that, along with filing on the electronic docket, a copy of this Order shall be sent to Defendants' addresses, as listed by the Motion for Default Judgment [Doc. No. 11], by first-class standard mail; and it is further

**ORDERED** that the Clerk is directed to mark this matter as **CLOSED**.

s/ Noel L. Hillman

At Camden, New Jersey          HON. NOEL L. HILLMAN, U.S.D.J.

8